IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO. 4:14-mj-092-MSH |
| | : | |
| JOSEPH CASTALDO, | : | |
| | : | |
| Defendant. | : | |

_____

### ORDER ON MOTION TO SUPPRESS

Presently pending before the Court is Defendant's motion to suppress and exclude evidence in limine.  (ECF No. 8.)  The Court held a hearing on the motion on September 17, 2014 and reserved ruling on the motion until the parties could fully brief the issues.  Defendant filed his brief on November 10, 2014 (ECF No. 15), the Government responded on November 18, 2014 (ECF No. 16), and Defendant replied on December 5, 2014 (ECF No. 17).  The motion being ripe for review, the Court finds that Military Police Specialist Hardy and Private Reyes (the "MPs") made permissible contact with Defendant and thereafter lawfully searched his person and property.  Defendant's motion is therefore denied.

### FINDINGS OF FACT

Defendant is charged with one count of possession of a controlled substance in violation of 21 U.S.C. § 844.  (Information, ECF No. 1.)  Defendant urges the Court to exclude and suppress the evidence obtained when Defendant was searched by the MPs on November 23, 2013.  (Mot. to Suppress 1.)  There is no material dispute over the facts

and circumstances surrounding the stop and subsequent searches.

On November 23, 2013, the MPs were on patrol at Fort Benning in a marked police car when they were alerted to the presence of two individuals walking on or near a main roadway through Fort Benning. (Tr. 5-6, ECF No. 14.) The MPs' supervisor directed them to make contact with the individuals, later determined to be Defendant Castaldo and a juvenile. (Tr. 26.) The MPs approached the two from behind in their patrol car, initiated their blue lights, and honked the horn to alert Defendant and his companion to their presence. (Def.'s Ex. 1, ECF No. 15-1.) Defendant and the juvenile were walking on the right side of the roadway, moving with the traffic, and were on a bridge with no sidewalk or shoulder when the MPs approached. (Tr. 28.) Officer Hardy testified that the two were in violation of O.C.G.A § 40-6-96 as pedestrians improperly walking on a highway.[1] (Tr. 9.)

After making initial contact with the two pedestrians, the MPs requested their identification and asked where they were going. (*Id*.) Defendant and his companion indicated that they were heading to Smith Gym, which is on Fort Benning roughly four or five miles from where the encounter took place. (*Id*.) The parties dispute whether the MPs asked Defendant and his companion if they wanted a ride or if the MPs told them they would take them to Smith Gym. Although in his written statement about the encounter Defendant stated that the MPs offered them a ride, Defendant testified that he

---

[1] "Where neither a sidewalk nor a shoulder is available, any pedestrian standing or striding along and upon a highway shall stand or stride as near as practicable to an outside edge of the roadway, and, if on a two-lane roadway, shall stand or stride only on the left side of the roadway." O.C.G.A. § 40-6-96(d).

was under the impression that they did not have a choice in the matter. (Tr. 66.) Defendant also stated that he had received rides from other officers on Fort Benning in the past. (Tr. 68.) At this point, the MPs made the decision not to cite the two for illegally walking on the highway and intended only to give them a courtesy ride to the Gym. (Tr. 11.)

When Defendant and the juvenile went to get in the patrol car, the MPs stopped them and stated that they would need to pat them down for weapons for officer safety prior to entering the car. (*Id.*) Defendant submitted to the first pat down of his person, which did not turn up any incriminating evidence. (Tr. 62, 12.) Thereafter, Specialist Hardy observed Defendant "visibly shaking. His whole body was shaking and his neck was throbbing." (Tr. 12.) Specialist Hardy then asked if she could search Defendant's backpack. (Tr. 13.) Specialist Hardy stated that Defendant gave her consent to search the bag, although Defendant testified that he was under the impression that he was not able to refuse the search. (Tr. 13, 63.) However, Defendant did not, at any time, refuse or object to Specialist Hardy's request after giving his consent to search. Before Specialist Hardy opened the backpack, Defendant spontaneously stated that he had a bong[2] in the bag and asked if he could just throw it over the bridge and get rid of it. (Tr. 13-14, 16.) At this point, the bong was retrieved from the backpack and Defendant was put into handcuffs. (Tr. 14.) Private Reyes then conducted a more thorough search of Defendant's person and found the substance identified as marijuana which is the subject

---

[2]   Specialist Hardy testified that a bong is "a glass-like tube that . . . you can smoke anything out of." (Tr. 13.)

of this prosecution.  (Tr. 15.)

## CONCLUSIONS OF LAW

Defendant argues that the evidence against him should be suppressed and excluded because it was the result of an illegal search in violation of the Fourth Amendment.  The Government contends that the search was conducted lawfully and therefore the evidence obtained is admissible.

**I.      Legal Standard**

Under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), an officer may stop and briefly detain an individual if the officer has reasonable suspicion that a crime is afoot.  A stop is supported by reasonable suspicion if, under the totality of the circumstances, the officer has an objectively reasonable suspicion that the individual has engaged, or is about to engage, in a crime.  *United States v. Acosta*, 363 F.3d 1141, 1144-45 (11th Cir. 2004).  The officer must be able to point to "specific and articulable facts" which provide a basis for the intrusion.  *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999).

Under *Terry*, an officer may frisk or pat-down an individual in order to conduct a limited search for weapons where the officer has reason to believe that the individual is armed and dangerous.  392 U.S. at 27.  "The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*; *Ybarra v. Ill*, 444 U.S. 85, 92-93 (1979) (frisk of tavern patron improper where police frisked every person in bar as a safety precaution).  Once the protective frisk is complete, however, further searching of the suspect is improper absent probable cause. *Minnesota v. Dickerson*, 508 U.S. 366, 378 (1993).  In the absence of probable cause or

reasonable suspicion, law enforcement officer "may nonetheless search an individual without a warrant so long as they first obtain the voluntary consent of the individual in question." *United States v. Peguero, Jr.*, 518 F. App'x. 792 (11th Cir. 2013) (quoting *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989).

## II. The MPs' initial contact and detention of Defendant was a valid *Terry* stop.

It is clear from the record that Defendant and his companion were walking along Lindsey Creek Parkway in violation of O.C.G.A. § 40-6-96. That statute states that "[w]here neither a sidewalk nor a shoulder is available, any pedestrian standing or striding along and upon a highway shall stand or stride as near as practicable to an outside edge of the roadway, and, if on a two-lane roadway, shall stand or stride only on the left side of the roadway." O.C.G.A. § 40-6-96(d). The undisputed testimony was that Lindsey Creek Parkway is a two-lane roadway and has no sidewalks and no shoulder on the bridge where Defendant and his companion were contacted. Defendant and his companion were on the right side of the roadway with their backs to traffic, and were therefore in violation of O.C.G.A. § 40-6-96(d) giving the MPs reasonable suspicion to justify a *Terry* encounter.

## III. The search that turned up the evidence in question was made with probable cause to believe that Defendant was in possession of a drug related object and was therefore a permissible search.

There were three relevant searches conducted during the encounter between Defendant and the MPs in this case. The first search was of Defendant's person and was a minimal pat down search for weapons. Although there is dispute regarding whether Defendant freely and voluntarily consented to the initial pat down of his person that did

5

not expose any weapons or contraband, this is immaterial to the outcome of the issue because no evidence was obtained as a result of that search and Defendant was still legally detained by the MPs at the time of the subsequent searches.

The second search was the search of Defendant's backpack. Specialist Hardy had not yet opened the backpack at the time Defendant voluntarily admitted to possession of the bong. Once Defendant stated that the backpack contained a bong (and offered to throw it over the bridge and get rid of it), the MPs had probable cause to believe that Defendant was in violation of O.C.G.A. § 16-13-32.2 for possession of a drug related object.[3] It was at this point that Defendant was placed in handcuffs, and the MPs conducted the third search, a more in depth search of his person, which turned up the substance alleged to be marijuana. Therefore, the MPs did not violate Defendant's Fourth Amendment rights in conducting either the second or third searches, and Defendant's motion is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress and exclude in limine (ECF No. 8) is denied.

SO ORDERED, this 5th day of December, 2014.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE

---

[3] It shall be unlawful for any person to use, or possess with the intent to use, any object or materials of any kind for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body marijuana or a controlled substance. O. C. G. A. § 16-13-32.2.